UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-80746-MC-UNA/BER

In re:

EXTRADITION OF LUCAS CARVALHO ROLLO

_____/

ORDER ON MOTION FOR RELEASE [ECF No. 14]

Before the Court is Defendant Lucas Carvalho Rollo's Motion for Release pending his extradition hearing. Mr. Rollo was arrested on April 30, 2020, based upon an extradition request by the Government of Brazil. ECF No. 3. He appeared before me by video teleconference the next morning. ECF No. 9. At that time, I appointed the Federal Public Defender as his counsel. I also advised him that he could seek release on bond and that he was entitled to a hearing at which he could challenge his extradition. *Id.* A bond hearing was held on May 20, 2020, which Mr. Rollo consented to attend by video teleconference. ECF No. 17. Mr. Rollo's parents also attended the hearing by video teleconference and were questioned about their willingness to cosign a bond. I have reviewed the Motion for Release, the Government's Response (ECF No. 16), as well as supplemental authority submitted by Mr. Rollo. ECF No. 18. I am fully advised and this matter is ripe for decision. For the reasons stated below, the Motion for Release is DENIED.

THE UNDERLYING OFFENSE

The Complaint in support of the extradition request establishes that Mr. Rollo was tried and acquitted in Brazil in February 2015 of knowingly and willfully engaging in sexual behavior with a minor. Mr. Rollo attended the trial and testified in his own defense. The acquittal was reversed on appeal and a conviction entered in June 2015. Mr. Rollo was sentenced to 112 months

incarceration. The appeal of his conviction was denied by the Brazilian Supreme Court in August 2016. ECF No. 3 at pp. 4-5.

## LEGAL PRINCIPLES

The parties do not dispute that the following legal principles apply. Mr. Rollo bears the burden of showing he is entitled to bond. *Matter of Extradition of Headley,* No. 18-mc-81148, 2018 WL 4938553, at *6 (S.D. Fla. Oct. 10, 2018) (J. Matthewman).[1] "There is a presumption against bond in extradition proceedings, reflecting the value placed on the United States fulfilling its obligations under international law to the requesting country." *Id.* (collecting cases). Bond will be granted only if there are "special circumstances" and the defendant does not pose a risk of flight or danger to the community. *See Id. at *6-7; Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1292-94 (S.D. Fla. 2017) (J. Torres). "[C]ourts consistently agree that special circumstances are supposed to be limited to the most extraordinary circumstances and cannot involve factors applicable to all potential extradites." *Headley,* 2018 WL 4938553, at *6.

## DISCUSSION

Mr. Rollo argues the following special circumstances justify his release on bond:

- Mr. Rollo's likelihood of success on the merits of extradition,
- the health risk posed to Mr. Rollo if he is incarcerated at this time,
- the lack of diplomatic necessity for Mr. Rollo to be held in pretrial detention,
- Mr. Rollo's service in the United States Army,
- Mr. Rollo's lack of significant assets and his parents' financial exposure if he were to flee,
- the delay that has already occurred in this matter and that further delay can be anticipated in the case, and,
- the cumulative effect of all of these factors.

ECF No. 14 at 5. I will now address each of these arguments.

---

[1] There is no consensus on whether the burden of proof is clear and convincing evidence or a preponderance of the evidence. *Headley*, 2018 WL 4938553, at *7 (collecting cases).

2

*Likelihood of Success*

Mr. Rollo intends to challenge whether the underlying offense is an extraditable offense under the terms of the treaty and that there are other defects in the extradition request. He argues that because he is likely to succeed on these arguments, he should be granted a bond. There is no special circumstance that differentiates Mr. Rollo's case from any other person challenging extradition. It certainly is not readily apparent on the face of the record that his arguments are meritorious. The facts of each individual extradition case are, of course, different. To treat the likelihood of success as a potential special circumstance would convert the bond proceedings into a full-blown (and premature) hearing on the merits. I decline to do so.

*Health Risk*

Health risk is not a special circumstance. Mr. Rollo's pleadings thoroughly discuss the current COVID-19 health situation, including the risks attendant to all incarcerated individuals.

Without minimizing those concerns, there is no evidence in the record that Mr. Rollo is at particular risk of death or serious bodily injury. Mr. Rollo is 26 years old. From 2017-2019, he served in the U.S. Army. Prior to his arrest he was working fulltime as a pool technician, a job that involves physical labor. There is no evidence in the record that Mr. Rollo suffers from health conditions that make him particularly susceptible to death or serious bodily injury from COVID-19. The Centers for Disease Control reports that as of May 27, 2020, there were 1,678,843 reported cases of COVID-19 nationally, with 99,031 associated deaths. *See* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited May 28, 2020). This data reflects a death rate of just under 6%, including persons of all ages and health conditions. For Florida, there were 53,285 confirmed cases and 2,364 deaths, for a death rate of 4.4%. https://floridahealthcovid19.gov/ (last visited May 28, 2020). Taken together, this publicly-

reported data suggests that a healthy 26 year old like Mr. Rollo has a greater than 95% chance of survival even if he contracts COVID-19.  Moreover, there is no evidence in the record that the Palm Beach County Jail (where he is currently housed) is unable to provide adequate medical treatment should Mr. Rollo contract COVID-19.

*Lack of Diplomatic Necessity for Detention*

Mr. Rollo argues that he should be granted bail because in its own extradition proceedings, Brazil "may grant alternative precautionary measures, including house arrest and the wearing of electronic anklets."  ECF No. 14 at 13.  The presumption against bail in U.S. extradition proceedings arises from the U.S. Government's obligation to comply with international treaty obligations and concerns about the diplomatic consequences of not producing an extraditee to a requesting country:

> This is because extradition treaties create a binding obligation on the United States government to surrender fugitives to its treaty partners once they are found to be extraditable ... If a foreign fugitive was released by the United States and absconded pending extradition, the government would suffer serious embarrassment, and this could create potential reciprocal noncompliance by other countries ...The "paramount importance" of an extradition treaty supports denials of bail in foreign extradition cases.  The special circumstances test was established to allow for a limited number of cases to be eligible for bail because any risk of flight is too significant a risk for the national interest to tolerate.

*In re Extradition of Garcia,* 761 F. Supp. 2d 468, 470–71 (S.D. Tex. 2010) (emphasis added) (citations and other quotations omitted), *cited in Berrocal*, 263 F. Supp. 3d at 1293.  The cases cited by Mr. Rollo conclude that the diplomatic rationale for the presumption against bond is reduced because a foreign country should not be offended if an extraditee in U.S. custody absconds after being released on conditions that the requesting country would afford to a potential extraditee. *See Matter of Extradition of Morales*, 906 F. Supp. 1368, 1373 (S.D. Cal. 1995); *United States v. Taitz,* 130 F.R.D. 442, 444 (S.D.Cal.1990).

4

I reject this premise.  First, the record does not show under what circumstances a potential extraditee in Brazil can be granted bond; after all, a potential extraditee in the U.S. can be placed on bond if special circumstances exist and there is no risk of flight or danger to the community.  Without knowing the preconditions required by Brazilian law, I decline to consider this factor a special circumstance.

!	Additionally, while Brazil (or other countries) may choose to accept more risk of the diplomatic consequences of failing to deliver a requested extraditee, the U.S. has not accepted those risks.  For over 100 years, U.S. law has allowed bond in extradition proceedings only upon a showing of special circumstances.  *See Wright v. Henkel*, 190 U.S. 40, 62 (1903).  Neither Congress nor the Executive Branch has sought to change that rule.  It is not this Court's role to weigh how much diplomatic risk the United States chooses to accept.

*Military Service*

Mr. Rollo's service in the U.S. Army, while commendable, is not a special circumstance that justifies release pending extradition.  The sole case cited for this proposition, *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1007 (D. Ariz. 2009), involved an individual who was providing ongoing, specialized skills training to the military and law enforcement.  Mr. Rollo is not currently providing such services, so the *Wroclawski* case is readily distinguishable.  There is nothing else that makes Mr. Rollo's situation unique from any other former member of the military for whom extradition is sought.  It does not qualify as a special circumstance.

*Lack of Assets and Severe Financial Exposure*

Should Mr. Rollo be released on bond and fail to comply with conditions of release, it would be financially devastating to him and his parents. Courts frequently structure bond conditions to have such consequences as a means to ensure compliance.  It would therefore be

5

expected that any potential extraditee released on bond would face severe financial consequences for failing to appear.  There is no special circumstance unique to Mr. Rollo.

*Delay to Date and Expected Future Delay*

Mr. Rollo notes that his sentence was imposed five years ago.  He argues that the intervening delay in seeking his extradition and the likely delay in having a final extradition hearing are special circumstances that justify a bond.  I disagree.

The Brazilian Supreme Court did not deny Mr. Rollo's final appeal until August 27, 2016. The extradition request was formally communicated to the United States less than three years later, on August 8, 2019, and was received by the State Department on or about August 20, 2019.  ECF No. 3-1 at 13.  The record is blank as to what steps were required under Brazilian law prior to making the formal request, or when those steps were taken.  Mr. Rollo has not shown that this kind of multi-year period in initiating a formal extradition request differentiates his case from other common extradition proceedings.

Mr. Rollo also argues that he will need extended time to prepare for the extradition hearing, which is a special circumstance justifying release on bond.  After canvassing the applicable caselaw, Judge Torres rejected a similar argument in *Berrocal*, 263 F. Supp. 3d at 1297-98.  I agree with his conclusion and adopt his reasoning.

! *Cumulative Effect*

! Finally, Mr. Rollo argues that the cumulative effect of all of these factors creates a special circumstance that justifies releasing him on a bond.  Even considering these factors cumulatively, they do not differentiate Mr. Rollo's case from the mine run of extradition requests.

6

*Risk of Flight or Danger to the Community*

Because I find that no special circumstances exist, I do not reach the question of whether Mr. Rollo poses a risk of flight or danger to the community.

DONE and ORDERED in West Palm Beach in the Southern District of Florida, this 28th day of May 2020.

_____
BRUCE E. REINHART
U.S. MAGISTRATE JUDGE